**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3299
_____

UNITED STATES OF AMERICA

v.

WILLIAM K. WASHINGTON,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-20-cr-00220-001)
District Judge: Honorable John M. Younge
_____

Argued: November 15, 2022

Before: HARDIMAN, RESTREPO, and PORTER,
*Circuit Judges*.

(Filed: August 24, 2023)

Brett G. Sweitzer **[Argued]**
Federal Community Defender Office for the Eastern District
of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

    *Counsel for Appellant*

Kevin L. Jayne **[Argued]**
Robert A. Zauzmer
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

    *Counsel for Appellee*

_____

## OPINION OF THE COURT
_____

PORTER, *Circuit Judge*.

William Washington was convicted for assaulting two people providing security services for a federal building. His indictment was flawed. It alleged that he assaulted two officers of the United States when his victims could be protected only if designated as persons assisting federal officers or employees. Because the government's evidence at trial did not prove that modification, we need not consider whether the modification was a constructive amendment or variance. We will reverse the

judgment and remand with instructions to grant Washington's renewed motion for a judgment of acquittal.

I

The Federal Protective Service is a federal law enforcement agency. Congress transferred FPS from the General Services Administration to the Department of Homeland Security under the Homeland Security Act of 2002. 6 U.S.C. § 203. FPS hires Protective Service Officers to manage security of federal property. FPS can also secure contracts for private security. FPS contracted with Triple Canopy, a private security company, to provide security for the Social Security Administration office in Philadelphia. To perform the contract, Triple Canopy assigned Deirdre Smith and Kenneth Bell to that office.

At the time of the events in question, William Washington had received Social Security Administration benefits for ten years. In May 2020, he needed to submit paperwork to the SSA to continue receiving benefits. Over the phone, Washington was told that he could deliver the paperwork to the SSA's Philadelphia office. Upon arrival, he found the front door locked. He pulled on the door in frustration, which attracted Smith and Bell's attention. Bell explained that the office was open, but with modified operations because of the coronavirus pandemic. Bell allowed Washington into the building and directed him to a drop box where he could deposit his paperwork.

Washington did not find that method of submission satisfactory. He insisted that he be allowed to visit the person with whom he spoke on the phone. The SSA's office manager joined the discussion and reiterated that in-person meetings

were not an option. The office manager told Washington to leave, or he would call the police. "Washington lost his temper and refused to leave." Appellant's Br. 6. He forced his way farther into the building, at which point Smith and Bell moved to restrain him. The ensuing scrap lasted more than three minutes before Smith and Bell were able to subdue and handcuff Washington. They then maintained custody over him until FPS and local police arrived, at which point FPS officers arrested him.

The government charged Washington with two violations of 18 U.S.C. § 111. The indictment alleges that Washington "forcibly assaulted, resisted, opposed, impeded, intimidated and interfered with *an officer of the United States, as designated in* [18 U.S.C. § 1114], that is, [the victim], a Protective Services Officer," while the victim was performing official duties. App. 19–20 (emphasis added).

Two months before trial, the government stated that Smith and Bell were contract officers. The government contended that they are designated under § 1114 because they were assisting the FPS in securing the Social Security office where they were assaulted. The evidence at trial confirmed that Smith and Bell are private contractors, not government employees.

Washington moved for acquittal at the close of the government's case, the close of evidence, and after the trial. He argued that the evidence did not support the indictment's charge that he assaulted an officer because his victims were private contractors. The District Court rejected Washington's "form-over-substance arguments." App. 11 n.3. Although the government had argued that § 1114 reaches Smith and Bell because they assisted FPS in securing a federal building, App.

4

28–29, the District Court held that they were officers of the United States because "they were performing federal functions." App. 11 n.3. It supported this conclusion with findings that Smith and Bell "were assigned to a federal SSA office; were protecting that facility pursuant to a contract with, under the supervision of, and with training by the FPS; and they were working with and responded to this altercation with the SSA District Manager of the federal facility." *Id*. It also noted "that Defendant raised no concerns about the sufficiency of the Indictment, or the crimes alleged therein at any point before the government had rested its case at trial, in a 'gotcha' moment." *Id*. For his two counts of felonious assault under 18 U.S.C. § 111, the District Court sentenced Washington to a few days' time served and twelve months of supervised release.

## II

The District Court had jurisdiction over this criminal case under 18 U.S.C. § 3231. We have jurisdiction over his appeal under 28 U.S.C. § 1291.

"As to the proper interpretation of a statute, our review is plenary." *United States v. Jackson*, 964 F.3d 197, 201 (3d Cir. 2020). We also exercise plenary review over "whether there was a constructive amendment of the indictment and whether there was a variance between the indictment and the proofs at trial." *United States v. Daraio*, 445 F.3d 253, 259 (3d Cir. 2006). We review evidentiary challenges to a conviction for sufficiency of the evidence, and evidence is sufficient if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" after viewing the evidence in the light most favorable to the prosecution. *Coleman v. Johnson*, 566 U.S. 650, 654 (2012)

5

(emphasis removed) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

## III

We start by considering the scope of "officer of the United States" as used in § 1114 and, in turn, Washington's indictment. Concluding that it does not include all classes of designated persons in that section, we turn to whether the government's proof at trial supports a conviction of a modified indictment. It did not. Because the government has not proven that Washington's victims were assistants for purposes of § 1114, we do not consider whether such modification would be a constructive amendment or a variance. It follows that Washington is entitled to a judgment of acquittal.

## A

Under 18 U.S.C. § 111, "Whoever forcibly assaults, resists, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties . . . shall, . . . where such acts involve physical contact with the victim of that assault," commit a felony. Section 1114 protects "any officer or employee of the United States or of any agency in any branch of the United States Government . . . while such officer or employee is engaged in official duties" and "any person assisting such an officer or employee in the performance of such duties." 18 U.S.C. § 1114(a).

Washington admits that he physically assaulted two private contractors providing security for a federal building. But he argues that they were not "officers of the United States" as the indictment charges. The government did not argue that

6

the Department of Homeland Security designated Smith and Bell officers according to 40 U.S.C. § 1315 or other statutory authority. So we turn to tools of statutory interpretation to decide whether Smith and Bell may still be officers of the United States as Washington's indictment charged. We conclude that the weight of authority favors an interpretation that excludes Smith and Bell.

1

"In determining the meaning of any Act of Congress, unless the context indicates otherwise, 'officer' includes any person authorized by law to perform the duties of the office." 1 U.S.C. § 1. An "officer of the United States" could be understood as a person authorized by law to perform duties of an office of the United States, but that interpretation does not decisively place Smith and Bell inside or outside the ambit of the phrase. The Department of Homeland Security has a statutory duty to protect federal buildings, 40 U.S.C. § 1315, and it contracted with Triple Canopy to fulfill that obligation. But Smith and Bell themselves do not hold an office of the United States and are not employees of a federal agency.

An officer may also include a "[p]erson holding [an] office of trust, command or authority in corporation, government, armed services or other institution or organization." *Officer*, *Black's Law Dictionary* (5th ed. 1979). To determine whether someone is an officer or employee, Black's identifies "important tests":

1. the tenure by which a position is held, whether its duration is defined by the statute or ordinance creating it, or whether it is

7

temporary or transient or for a time fixed only by agreement;

2. whether it is created by an appointment or election, or merely by a contract of employment by which the rights of the parties are regulated; [and]

3. whether the compensation is by a salary or fees fixed by law, or by a sum agreed upon by the contract of hiring.

*Id.*

*Black's* separately defines "Officer of the United States" as "An officer nominated by the President and confirmed by the senate or one who is appointed under an act of congress, by the President alone, a court of law, or a head of a department." *Officer, Officer of the United States*, *Black's Law Dictionary* (5th ed. 1979); *see* U.S. Const. art. II, § 2. The current edition of *Black's* defines the term similarly: "Someone who holds an office of trust, authority, or command. In public affairs, the term refers esp. to a person holding public office under a national, state, or local government, and authorized by that government to exercise some specific function." *Officer*, *Black's Law Dictionary* (11th ed. 2019).

Each of these definitions supports a reading of 1 U.S.C. § 1 that excludes Smith and Bell as officers. They do not hold an office of trust, command, or authority. Their tenure is either transient or fixed by agreement; the contract under which they provide services is closer to an employment contract than an appointment or election. The government pays rates set by contract, not law. And they were not nominated and confirmed or otherwise appointed by Congress, the president, a court, or

a department head. Smith and Bell are not officers of the United States under these definitions.

The government urges us to reach the opposite conclusion by citing *United States v. Torres*, 862 F.2d 1025 (3d Cir. 1988). Torres was a city police officer who had been detailed to a DEA Task Force. *Id.* at 1027–28. As part of that detail, Torres took an oath. *Id.* This Court held that local government employees who take the oath of office, 5 U.S.C. § 3331, as part of an assignment to a federal agency, 5 U.S.C. § 3374, can be officers for purposes of § 1114. 862 F.2d at 1030. Here, the record does not show that the contractors have taken an oath, and they are not state or local government employees assigned to a federal agency. Accordingly, *Torres* does not establish that Smith and Bell are officers.

2

The government argues that an obsolete regulation and a separate criminal statute's definitions of "law enforcement officer" expand "officer" to include Smith and Bell. Neither source lives up to the government's argument.

First, the government points to a final rule promulgated by the Attorney General in 1987 as evidence that private contractors are designated as officers.[1] Appellee's Br. 20 (citing 28 C.F.R. § 64.1); *see* 52 Fed. Reg. 4767 (Feb. 17, 1987). That regulation states, "The protective coverage has been extended to those *federal officers and employees* whose jobs involve inspection, investigative or law enforcement

---

[1] The Department of Justice had statutory authority to designate victims under § 1114 until 1996. *See* 18 U.S.C. § 1114 (1994).

9

responsibilities, or whose work involves a substantial degree of physical danger from the public that may not be adequately addressed by available state or local law enforcement resources." 28 C.F.R. § 64.1 (emphasis added).

By its text, the regulation is limited to federal officers and employees. It then enumerates two categories of federal officers and employees. The government wants to shoehorn private contractors into the second—officers and employees exposed to "a substantial degree of physical danger from the public"—without first proving that they are federal officers or employees. Section 64.2 repeats that the designated persons must be federal officers or employees, so the use of officer in that part of the C.F.R. does not extend to private contractors, either. 28 C.F.R. § 64.2.

In the notes to the final rule, the Attorney General explained that many "substantive comments requested changes in the definition of several categories of Federal employees" and others "asked that additional categories of Federal employees be designated." 52 Fed. Reg. at 4768. The rule does not mention or contemplate private contractors, further indicating that the Attorney General did not intend the regulation to cover private contractors.

Second, the government leans on a separate criminal statute. That statute defines "law enforcement officer" as "an officer or employee of the Federal Government, or *a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant*" performing certain functions, including police functions. Appellee's Br. 22 (quoting 18 U.S.C. § 1515(a)(4)). The government emphasizes that the provision recognizes agents as a separate category of protected persons. The

10

government contends that, under that statute: Smith and Bell are agents of the federal government; they perform a police function; agents that perform a police function are law enforcement officers; law enforcement officers are officers of the federal government; therefore, Smith and Bell are officers of the federal government. Not so. The statute says that officers who perform police functions are law enforcement officers, not that all law enforcement officers are officers of the United States. And, in any event, § 1515(a)(4) defines "law enforcement officer" only for 18 U.S.C. §§ 1512 and 1513. 18 U.S.C. § 1515(a). Thus, the statute and regulations do not disturb our conclusion that Smith and Bell are not officers of the United States under § 1114.

3

The District Court relied on a functional test and decided that Smith and Bell were officers. App. 11 n.3 (citing *United States v. Feola*, 420 U.S. 671, 679 (1975)). After evaluating several factors, the District Court concluded that Smith and Bell were officers of the United States because they "were performing federal functions as federal officers." App. 11 n.3 (citing *Feola*, 420 U.S. at 679). But *Feola* did not clearly define what makes one an officer of the United States

The issue in *Feola* was whether assailants must know the victim's status as a designated person to be convicted under § 111. 420 U.S. at 672–73. The Court, believing that "Congress intended to protect both federal officers and federal functions," rejected a strict scienter requirement. *Id.* at 679 (emphasis removed). Because *Feola* does not purport to define "officer of the United States," it does not affect our interpretation.

11

The government charged Washington with assaulting officers of the United States. FPS did not designate Smith and Bell officers of the United States. They are not officers of the United States under the plain meaning of the phrase. And they are not officers of the United States as the phrase is used in any of the other contexts provided by the parties. The Supreme Court did not expand the definition of officer when it held that a criminal defendant violates § 111 by assaulting an officer of the United States without knowing that the victim is an officer. For these reasons, the government has failed to prove that Smith and Bell are officers of the United States, and the District Court's contrary conclusion must be reversed.

B.

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. "It is generally sufficient that an indictment set forth the offense in the words of the statute itself." *Hamling v. United States*, 418 U.S. 87, 117 (1974). An indictment cannot be broadened through amendment except by the grand jury. *Stirone v. United States*, 361 U.S. 212, 215–16 (1960) (citing *Ex parte Bain*, 121 U.S. 1 (1887)); *see also United States v. Harra*, 985 F.3d 196, 221–22 (3d Cir. 2021). But some variations between the indictment and the conviction are permissible. *Daraio*, 445 F.3d at 262.

Section 111 prohibits the assault of "any person designated in section 1114." But Washington's indictment was more specific. Section 1114 designates three classes of victims: federal officers, federal employees, and persons assisting "any officer or employee of the United States or of any agency in any branch of the United States Government . . . while such

12

officer is engaged in official duties." 18 U.S.C. § 1114(a). The government charged Washington with assaulting an officer of the United States. At trial, it submitted evidence that he assaulted persons assisting an officer or employee of the United States. We now consider whether that evidence was sufficient to prove that Smith and Bell were assistants. For the reasons below, we conclude it was not, so we need not decide whether the indictment was permissibly varied.

Section 111 prohibits assault against any person assisting an officer or employee of the United States in the performance of official duties or on account of such assistance. The language of §§ 111 and 1114 calls for a connection between the person assisted and his performance of an official duty. The government argued to the District Court that Smith and Bell were assisting the FPS because they were "engaged for the purpose of providing security to the Social Security Office." J.A. 29; *see also* J.A. 248 (arguing Smith and Bell are "persons assisting the Federal Protective Service"). It elicited testimony to that effect, too: the government asked Smith and Bell on direct examination whether they were "assisting the Federal Protective Service." Both answered affirmatively. J.A. 56, 113.

Washington understood the government's theory to be that Smith and Bell were assistants to an agency in general. He argued that theory cannot support his conviction because the statute requires assistance to a person—an officer or employee. The government says Washington "misstate[d]" its theory and disavows on appeal any theory of liability other than Smith and Bell assisting individual officers. Indeed, the only testimony it elicited concerning their assistance to the agency itself was Smith and Bell's conclusory agreement to that proposition. As

13

a result, we will not consider whether assistance to an agency in general can support Washington's conviction.

The government instead contends that it "put on numerous examples of Officer Bell and Smith's assistance to various specific officers and employees of the United States." *Id.* It referred to "unnamed but real FPS officers," FPS officer Clarence Thomas, and SSA district manager Shawn Fordam. *Id.* at 42. But it did not introduce sufficient evidence of Smith or Bell assisting those officers in their official duties.

The unnamed but real FPS officers, for instance, were responsible for training contractors in baton use, firearm qualifications, and using on-site equipment like x-ray machines. Smith and Bell provided no assistance to the unnamed officers in performing those duties, so they could not be assaulted while assisting or on account of their assistance.

Likewise, the evidence does not show Smith and Bell assisting Thomas in performing his official duties. The government intended to call Thomas to testify about statements Washington made after his arrest. J.A. 175–76. But it did not intend to ask him about his official duties. And while the record shows that Thomas ultimately arrested Washington, it does not speak to Thomas's official duties before the arrest. Smith and Bell were assaulted before attempting to arrest Washington, so the assault was not based on assisting the performance of that duty.

Finally, Smith and Bell were not assaulted while assisting Shawn Fordam in his official duties. The government called Fordam as a witness at trial. It asked about the services the Social Security Administration provides, but Smith and Bell were not assaulted for assisting in processing claims for

14

retirement, disability, supplemental security income, and the like. Nor were they assaulted for helping Fordam perform his responsibility to provide surveillance footage to the government. In short, the evidence does not establish that Smith and Bell were assisting Fordam in the performance of his official duties.

The evidence the government cites supports, at best, that Smith and Bell were assisting the FPS—the precise argument it disavowed. *See* Appellee's Br. 31–32, 41. But it did not build a record of Smith or Bell assisting a specific officer. *See, e.g.*, *United States v. Grant*, 979 F.3d 1141, 1143 (6th Cir. 2020) (Deputy U.S. Marshal testified victim was assisting him in performing official duty of detaining federal prisoner before sentencing). Without a record of Smith and Bell assisting a specific person performing official duties, we cannot affirm the conviction. We thus conclude that the government failed to prove at trial that Smith and Bell were assaulted while assisting specific federal officers or employees in the performance of their official duties.

Because we conclude that the government has not proven the proposed modification, we need not consider whether that modification would have been a constructive amendment, impermissible variance, or permissible variance.

IV

We will reverse the denial of the renewed motion for acquittal and remand with instructions to grant the motion for a judgment of acquittal.